**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**TONY JACKSON,**

Petitioner,

**-vs-** **Case No. 12-C-362**

**JUDY SMITH, Warden,**
**Oshkosh Correctional Institution,**

Respondent.

---

# DECISION AND ORDER

---

Tony Jackson was convicted of second-degree reckless homicide and of being a felon in possession of a firearm. Jackson's petition for habeas relief must be denied.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the review of state court convictions in federal habeas corpus proceedings. A federal court may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if the state court either incorrectly laid out governing United States Supreme Court precedent or decided a case differently than a factually and materially indistinguishable Supreme Court case. § 2254(d)(1). A state court unreasonably applies Supreme Court precedent when it correctly identifies the governing legal rule but unreasonably applies it to the facts of a case; unreasonably extends a legal principle from the Supreme Court's

precedent to a new context in which it should not apply; or unreasonably refuses to extend that principle to a new context in which it should apply. § 2254(d)(1); *Ellison v. Acevedo*, 593 F.3d 625, 632 (7th Cir. 2010).

Jackson argues that his confession was procured in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The Wisconsin Court of Appeals rejected this argument after finding that Jackson was not in custody when he confessed. *State v. Jackson*, 795 N.W. 2d 63 (Wis. Ct. App. 2010) (Unpublished Disposition). What follows is a summary of the factual background from the appellate court's opinion. These findings are presumed correct in a federal habeas proceeding. § 2254(e)(1).

On the night of the incident, Milwaukee police were dispatched in response to a call of "shots fired." Upon arrival, police determined that Anicka Labourgeois had been shot and she was transferred to the hospital. Shortly after arriving on the scene, Milwaukee Police Detective Erik Gulbrandson spoke with Jackson, a witness to the crime, who was Labourgeois's boyfriend and father of her unborn child. Detective Gulbrandson spoke with Jackson for approximately two hours, from 12:00 a.m. until 2:00 a.m.. The interview took place in an unmarked police car, with Jackson seated in the front passenger's seat and Detective Gulbrandson in the driver's seat. Jackson was not handcuffed or otherwise restrained. While seated in the car Jackson told Detective Gulbrandson about a fight that occurred just prior to the shooting, involving several females. Detective Gulbrandson then asked Jackson if he would come to the police station to help identify the individuals involved in the fight. Jackson agreed. Detective Gulbrandson informed the transporting officer that

Jackson was not in custody and while Jackson was transported to the police station he was not restrained in any manner. Detective Gulbrandson remained at the crime scene.

After Jackson was transported to the police station, Detective Gulbrandson learned that Labourgeois had died. Between approximately 2:30 a.m. and 2:45 a.m., Detective Gulbrandson returned to the police station. Detective Gulbrandson participated in a briefing with detectives on the next shift. Meanwhile, Jackson was waiting for Detective Gulbrandson in an interview room, with concrete walls and no windows other than one in the door, which was locked from the inside. Detective Gulbrandson testified that the room was locked, not because Jackson was in custody, but "because there are people [in the police station] that actually are in custody, and we can't allow people to roam the halls free, as they would be able to open the other rooms and it puts them at risk as well as other people in the building at risk." Detective Gulbrandson also stated that routine checks of the room are made and that if Jackson had expressed a desire to leave he would have been allowed to do so.

At 4:17 a.m, Detective Gulbrandson was able to continue his interview with Jackson and another detective present. Approximately twenty minutes into the interview, Jackson asked how Labourgeois was doing. Detective Gulbrandson informed Jackson that Labourgeois had passed away. Jackson began to cry and asked if Detective Gulbrandson was serious. When Detective Gulbrandson assured Jackson that he was, Jackson continued to cry and admitted that he had accidentally shot Labourgeois. At the time of Jackson's admission

he was not handcuffed or restrained in any manner. At this point, Detective Gulbrandson stopped the interview and gave the *Miranda* warning.

For *Miranda* purposes, custody is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. *Howes v. Fields*, — U.S. —, 132 S. Ct. 1181, 1189 (2012). A suspect is in custody for purposes of *Miranda* if, based on the totality of the circumstances, a reasonable person in the suspect's position would not have believed he was free to leave. *United States v. Snodgrass*, 635 F.3d 324, 327 (7th Cir. 2011). Courts must analyze the "circumstances surrounding the interrogation," and then, "given those circumstances," ask if "a reasonable person [would] have felt he or she was at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *J.D.B. v. North Carolina*, — U.S. —, 131 S. Ct. 2394, 2402 (2011) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning. *Howes* at 1189 (collecting cases).

The court of appeals found that Jackson was not in custody when he gave his confession because "Jackson had voluntarily come to the police station as a citizen witness to a crime. He presented no evidence that he was aware that he was in a locked interview room. And the state has shown that the room was locked for Jackson's own safety and the

safety of those in the building. Simply stated, a reasonable person in Jackson's position would not have believed he was in custody." 2010 WL 5288164, at *4. The Court agrees that Jackson was not in custody because of the combination of factors cited by the court of appeals. Jackson was not restrained, and he went to the police station as a witness, not a suspect. The fact that the door was locked only for safety suggests that Jackson would have been allowed to leave if he simply asked. And Jackson did not even know the door was locked in the first instance. At minimum, the court of appeals did not unreasonably apply Supreme Court precedent in determining that Jackson was not in custody at the time of his confession.

Jackson also argues that the trial court erred by denying his request to instruct the jury on the lesser-included offense of homicide by negligent handling of a dangerous weapon. As an initial matter, "due process requires that a lesser included offense be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982) (emphasis in original). As the court of appeals explained, "Jackson's defense – that he was intentionally shooting at a moving vehicle in self-defense and hit Labourgeois by mistake – is inconsistent with a finding of guilty on the homicide-by-negligent-handling-of-a-dangerous-weapon offense." *Jackson* at *6. In other words, the evidence did not warrant an instruction on this offense because the evidence showed that Jackson intentionally shot at the vehicle. Moreover, even if the evidence warranted such an instruction, Jackson cannot demonstrate that the failure to instruct resulted in a fundamental miscarriage of justice.

*Nichols v. Gagnon*, 710 F.2d 1267 (7th Cir. 1983); *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 404 (7th Cir. 1979).

In connection with this order, the Court must "issue or deny a certificate of appealability . . ." Rule 11(a), Rules Governing Section 2254 Cases. The Court will not issue a certificate because it is not debatable among reasonable jurists whether this petition should have been resolved in a different manner or that the issues deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Jackson's petition for a writ of habeas corpus is **DENIED**;

2. Jackson's implied request for a certificate of appealability is **DENIED**; and

3. This matter is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of August, 2012.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**